**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(NORTHERN DIVISION)**

KIM HAMMOND, et al. *

Plaintiffs, *

v. * Case No. 1:25-cv-00336-RDB

IAN S. LEOPOLD, et al. *

Defendants. *

* * * * * * * * * * * * *

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

Respectfully submitted,

/s/ *Jason C. Brino*
Jason C. Brino (Fed. Bar No. 23535)
brino@esglawmd.com
Esworthy Garner & Stevens LLC
210 Allegheny, Suite 110
Towson, Maryland 21204
(Tel) 410-321-0402
(Fax) 410-321-0403
*Counsel for Defendants*

# TABLE OF CONTENTS

**Heading** **Page**


I. INTRODUCTION ........ 1

**II. FACTS** ........ 2

**A. Procedural Background** ........ 2

**B. Complaint Filed by Plaintiffs** ........ 2

**C. Affidavit of Ian Leopold** ........ 4

**D. The Common Unit and Warrant Purchase Agreement between Defendant Pridewear, LLC and Plaintiff Kim Hammond.** ........ 5

**III. ARGUMENT** ........ 6

**A. Standard of Review.** ........ 6

1. Choice of Law ........ 6

2. Motion to dismiss for improper venue - Rule 12(b)(3) ........ 7

3. Motion to Transfer - 28 U.S.C. § 1404(a) ........ 8

**B. The Court Should Dismiss the Action Because the District of Maryland is an Improper Forum for this Dispute Under 28 U.S.C. § 1406(a).** ........ 9

**C. The Court Should Enforce the Forum Selection Clause in the Agreement, Which is Presumptively Valid, and Dismiss the Action.** ........ 10

1. The forum selection clause is mandatory and reasonable. ........ 10

2. The Scope of the Clause Encompasses All Claims and All Parties to the Action. ........ 13

**D. The Court Should Dismiss the Action on Grounds of *Forum Non Conveniens*.** ........ 17

**E. Alternatively, the Court Should Transfer the Action to the Southern District of New York Under 28 U.S.C. § 1404(a).** ........ 17

**IV. CONCLUSION** ........ 18

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(NORTHERN DIVISION)**

| | | |
|---|---|---|
| KIM HAMMOND, et al. | * | |
| Plaintiffs, | * | |
| v. | * | Case No. 1:25-cv-00336-RDB |
| IAN S. LEOPOLD, et al. | * | |
| Defendants. | * | |

* * * * * * * * * * * * *

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

Defendants Ian S. Leopold, Pridewear, LLC and American Collegiate Sports LLC ("Defendants"), by their undersigned counsel and pursuant to Fed. R. Civ. P. 12, 28 U.S.C. § 1406(a) and Local Rule 105.1, move for an order dismissing this action for improper venue, including on the alternative basis of the parties' valid and enforceable contractual forum selection clause. By virtue of this clause, the parties agreed to submit to the jurisdiction of the state courts of New York and to the jurisdiction of the United States District Court for the Southern District of New York, and moreover agreed "not to commence any suit, action or other proceeding arising out of or based upon this Agreement except in the state courts of New York or the United States District Court for the Southern District of New York." Alternatively, Defendants move for an order under 28 U.S.C. § 1404 transferring the case to the Southern District of New York.

## I. INTRODUCTION

Plaintiffs have sued Defendants in Maryland notwithstanding the fact that the contract from which all of Plaintiffs' claims arise contains a valid, enforceable forum selection clause designating the state courts of New York and the United States District Court for the Southern District of New York as the forum "for the purpose of any suit, action or other proceeding arising

out of or based upon this Agreement."[1] At all relevant times leading to the execution of the agreement, Plaintiffs were aware that New York City constituted the Defendants' principal place of business, and all material communications and negotiations concerning the agreement took place in New York. Accordingly, based upon the parties' agreed upon selection of venue, Defendants moves for an order dismissing Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(1), (3) or (6) and/or 28 U.S.C. § 1406(a), or in the alternative transferring the Action under 28 U.S.C. § 1404(a) to the United States District Court for the Southern District of New York.

## II. FACTS

### A. Procedural Background.

Plaintiffs Kim Hammond ("Hammond") and Milnel Foundation, Inc. ("MFI") (collectively, "Plaintiffs") filed suit against Defendants in this Court on or about February 4, 2025, alleging the loss of return on certain investments and related damages. Following purported service on the Defendants and in response to the Plaintiffs' Motion to the Clerk for Entry of Default Against All Defendants (Dkt. 5), on May 8, 2025, this Court entered Orders of Default as to each Defendant (see Dkt. 6, Dkt. 8, and Dkt. 10). The parties subsequently filed a Joint Motion to Vacate Orders of Default on May 30, 2025 (Dkt. 15), which this Court granted via its Order of June 2, 2025 (Dkt. 16). In addition to vacating the default, the Order extended the time for Defendant to file their defenses and objections under Fed. R. Civ. P. 12 to June 16, 2025. *Id*.

### B. Complaint Filed by Plaintiffs.

Plaintiffs' Complaint does not include factual allegations applicable to all counts, opting instead to allege facts under each cause of action. The Complaint assiduously avoids pleading facts

[1] As shown below, this clause is an exclusive, or mandatory forum selection clause by virtue of the parties' mutual agreement "not to commence any suit, action or other proceeding arising out of or based upon this Agreement except in the state courts of New York or the United States District Court for the Southern District of New York."

that recognize the existence of the parties' written agreements, however it does admit in **Count III: Breach of Contract** that the parties entered into a contract:

> By virtue of the discussions alleged in Paragraph 7 above, Plaintiffs and Defendant Pridewear entered into a contract whereby Plaintiffs promised to make certain investments of funds into Defendant Pridewear and permit such Defendant to use such funds to purchase raw materials and otherwise produce and sell the clothing apparel products, in consideration for Defendant Pridewear's promise to Plaintiff, made through Defendant Leopold as an authorized agent of Defendant Pridewear, to properly manage such investments for such purposes and to confer upon Plaintiffs certain rights and returns on such investments, including without limitation interest on the convertible debt shares, and an ownership interest and rights to distributions from the earnings and profits of Defendant Pridewear.

*Complaint* (Dkt. 1), at par. 22. Paragraph 7 of the Complaint, referenced above as allegedly containing the discussions that formed the basis for the parties' agreement, states as follows:

> On or about January 1, 2015, Defendant Leopold initiated discussions with Plaintiffs in the Baltimore, Maryland area to encourage Plaintiffs to invest substantial funds in Defendant Pridewear for the production of clothing apparel for police and first responders. Defendant Leopold represented to Plaintiffs that such monetary investments would be managed by him and would be used to fund Defendant Pridewear's purchase of raw materials required for production of such clothing apparel. Defendant Leopold further represented that such investments, in the form of convertible debt shares, would confer upon Plaintiffs, among other rights, an interest rate and rate of return of eight percent (8%), and that investments made in the form of equity would confer upon Plaintiffs, among other rights, ownership interests in Defendant Pridewear and a rights to earnings, profits and distributions as Defendant Pridewear may make to equity shareholders from time to time.

*Complaint*, at par. 7.

The same allegations in paragraph 7 that ostensibly form the basis for Plaintiffs' breach of contract claim also serve as the basis for various other counts in the Complaint, including:

- Count I: Breach of Fiduciary Duty (comprised of paragraphs 7-16);
- Count IV: Intentional Misrepresentation (predicated on "the factual representations and promises made to Plaintiffs as alleged in Paragraph 7 above")[2];

[2] Complaint, par. 28.

- Count V: Negligent Misrepresentation (alleging negligence on the part of the defendants in "ascertaining the accuracy of their representations and promises made to Plaintiffs, set forth in Paragraph 7 above…")[3]; and

- Count VIII: Fraudulent Misappropriation by Fiduciary (alleging fraud by the defendants in "making the factual representations and promises set forth in Paragraph 7").[4]

The claims in the other counts in the Complaint likewise arise out of or are based on the parties' contract and contractual relationship: Count II: Negligence, Count VI: Unjust Enrichment and Count VII: Tortious Interference with Contractual Relations.

**C. Affidavit of Ian Leopold.**

Defendant Ian Leopold is the Managing Member of Defendant Pridewear, LLC, a Delaware company he formed in 2012. See Affidavit of Ian S. Leopold ("*Leopold Aff.*") filed herewith, at ¶ 3. Pridewear is an apparel company marketed to university recreational sports and fitness departments, club and intramural sports teams, law enforcement agencies, and fire departments. *Id*. at ¶ 4. Pridewear maintains its principal office in New York. *Id*. at ¶¶ 5-6.

Leopold and Plaintiff Hammond became acquainted when Leopold moved to Maryland in the early 1990s, and they continued their friendship after Leopold moved back to New York in 2004. *Id*. at ¶¶ 11-12. Hammond was not a targeted investor of Pridewear. Instead, Pridewear found its investors by compiling a list of experienced investors with net worths over $10 million, most with an MBA in finance, that were previously known to Leopold or to the chairman of Pridewear's advisory board, a retired dean from Northwestern's Kellogg School of Management who helped Leopold me compile the investor list. *Id*. at ¶ 13. Mr. Hammond was never included in any Pridewear's investor target list because he did not meet the criteria. *Id*.

---

[3] Complaint, par. 33.

[4] Complaint, par. 50.

Hammond and Leopold kept in touch over the years, with Hammond occasionally using Leopold's New York apartment when Leopold was out of town. In 2014, Leopold helped Hammond sell his Maryland business, the Falls Road Animal Hospital, as an unpaid advisor given their close friendship. It was during one of Hammond's trips to New York concerning the sale of his business that he learned about the Pridewear investment. *Leopold Aff.*, at ¶¶ 12, 15-16. In February of 2015, Hammond made his initial investment of $100,000.00 and received a Convertible Note from Pridewear. *Id.* at ¶¶ 18-19.

### D. The Common Unit and Warrant Purchase Agreement between Defendant Pridewear, LLC and Plaintiff Kim Hammond.

On or about April 29, 2019, Mr. Hammond converted his investment to equity by surrendering the Convertible Note to Pridewear and executing a Common Unit and Warrant Purchase Agreement (CUWPA), which documented his membership interest. *Leopold Aff.,* at ¶¶ 25-26. The CUWPA (attached as Exhibit 2 to the Leopold Affidavit) provided, in pertinent part:

> 6.3 Governing Law. This Agreement shall be governed by and construed under the laws. of the State of Delaware without regard to the conflict of law principles thereof.
>
> 6.11 Entire Agreement. This Agreement (including the Exhibits hereto) and the other Transaction Agreements[5] constitute the full and entire understanding and agreement between the parties with respect to the subject matter hereof, and any other written or oral agreement relating to the subject matter hereof existing between the parties are expressly canceled.
>
> 6.12 Dispute Resolution. The parties (a) hereby irrevocably and unconditionally submit to the jurisdiction of the state courts of New York and to the jurisdiction of the United States District Court for the Southern District of New York for the purpose of any suit, action or other proceeding arising out of or based upon this

---

[5] The term **"Transaction Agreements"** is defined in the agreement as meaning "this Agreement, the Warrants and the Operating Agreement." Exh. 2, ¶1.5 (h).

> Agreement, (b) agree not to commence any suit, action or other proceeding arising out of or based upon this Agreement except in the state courts of New York or the United States District Court for the Southern District of New York, and (c) hereby waive, and agree not to assert, by way of motion. as a defense. or otherwise, in any such suit, action or proceeding, any claim that it is not subject personally to the jurisdiction of the above-named courts, that its property is exempt or immune from attachment or execution, thar the suit, action or proceeding is brought in an inconvenient forum, that the venue of the suit, action or proceeding is improper or that this Agreement or the subject matter hereof may not be enforced in or by such court.

Additional facts may be added below as needed.

## III. ARGUMENT

### A. Standard of Review.

1. Choice of Law.

In determining what law governs the interpretation of the Common Unit and Warrant Purchase Agreement, the court exercising its diversity jurisdiction applies the conflicts of law rules of the state in which it sits. *Three M Enterprises, Inc. v. Texas D.A.R. Enterprises, Inc.,* 368 F. Supp. 2d 450, 457 (D.Md. 2005). *See also, Eisaman, et al. v. Cinema Grill Systems, Inc., et al.*, 87 F. Supp. 2d 446, 448 (D.Md. 1999) ("[I]n diversity cases ... the Fourth Circuit applies state law to determine enforceability" of forum selection clauses). The agreement *sub judice* provides that it "shall be governed by and construed under the laws of the State of Delaware without regard to

the conflict of law principles thereof." (Exh. 2, §6.3 Governing Law). Both Maryland law[6] and Delaware law[7] follow federal law with regard to evaluating forum selection clauses.

The Supreme Court has held that a forum selection clause is *prima facie* valid and may only be set aside upon a showing of unreasonableness. *The Bremen v. Zapata Off-Shore Co., supra*, 407 U.S. at 10. The Fourth Circuit has observed that since *Bremen*, "the Supreme Court has consistently accorded choice of forum and choice of law provisions presumptive validity." *Jensen v. Klayman*, 115 F. App'x 634, 635 (4th Cir. 2004)(quoting *Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996)).

2. Motion to dismiss for improper venue - Rule 12(b)(3)

A court may dismiss a case for improper venue pursuant to Fed. R. Civ. P. 12 (b)(3). When a defendant challenges venue through a motion to dismiss, "the plaintiff bears the burden of establishing that venue is proper." *Harkins Contracting, supra* at *6 (*citing Jones v. Koons Auto., Inc.*, 752 F. Supp. 2d 670, 679-80 (D. Md. 2010))(other citations omitted). When the court decides a motion to dismiss for improper venue, "all inferences must be drawn in favor of the plaintiff, and 'the facts must be viewed as the plaintiff most strongly can plead them.'" *Three M Enters., Inc. v. Tex. D.A.R. Enters., Inc.*, 368 F. Supp. 2d 450, 454 (D. Md. 2005) (citations omitted). In reviewing

---

[6] *See, e.g., Gilman v. Wheat, First Securities, Inc.*, 345 Md. 361, 378 (1997) (holding that under Maryland contract law, "a forum selection clause is presumptively valid and enforceable and the party resisting it has the burden of demonstrating that it is unreasonable")(citing *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972) and *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 111 S. Ct. 1522, 113 L. Ed. 2d 622 (1991)). A court applying Maryland law may deny enforcement of a forum selection clause only upon a clear showing that enforcement under the circumstances presented would be unreasonable, i.e., if (i) it was induced by fraud or overreaching, (ii) the contractually selected forum is so unfair and inconvenient as to practically deprive the plaintiff of a remedy or of its day in court, or (iii) enforcement would contravene a strong public policy of the state where the action is filed. *Gilman*, 345 Md. at 378.

[7] *See, e.g., Ingres Corp. v. CA, Inc.*, 8 A.3d 1143, 1145 (Del. 2010)(holding that where contracting parties have expressly agreed upon a legally enforceable forum selection clause, a court should honor the parties' contract and enforce the clause) (citing *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972).

a motion to dismiss brought pursuant to Rule 12(b)(3), the Court can consider evidence outside the pleadings. *Sucampo Pharms., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 550 (4th Cir. 2006).

3. Motion to Transfer - 28 U.S.C. § 1404(a)

Pursuant to 28 U.S.C. § 1404(a), "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The district court has discretion to adjudicate motions for transfer according to an "individualized, case-by-case consideration of convenience and fairness." *Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S.Ct. 805, 812, 11 L.Ed.2d 945 (1964). The moving party bears the burden to demonstrate that transfer to another district is proper. *Harkins Contracting, supra* at *6-7 (*citing Stratagene v. Parsons Behle & Latimer*, 315 F. Supp. 2d 765, 771 (D. Md. 2004)). The court has great discretion in determining whether to transfer a case under Section 1404(a), and the Supreme Court has stated that an "individualized, case-by-case consideration of convenience and fairness" guides the court's decision in this regard. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988)(citations omitted). The Court considers four factors when deciding whether to transfer venue: "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015).

The Supreme Court has addressed the impact of a forum selection clause on such analysis. In *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988), the Supreme Court held, as follows:

> A motion to transfer under § 1404(a) … calls on the district court to weigh in the balance a number of case-specific factors. **The presence of a forum-selection clause such as the parties entered into in this case will be a significant factor that figures centrally in the district court's calculus.** In its resolution of the § 1404(a) motion in this case, for example, the District Court will be called on to address such issues as

> the convenience of a Manhattan forum given the parties' expressed preference for that venue, and the fairness of transfer in light of the forum-selection clause and the parties' relative bargaining power. The flexible and individualized analysis Congress prescribed in § 1404(a) thus encompasses consideration of the parties' private expression of their venue preferences.

*Id.*, at 29-30 (emphasis added). The presence of a forum-selection clause thus requires consideration of the convenience of the proposed forum and the fairness of transfer in light of the forum selection clause.

**B. The Court Should Dismiss the Action Because the District of Maryland is an Improper Forum for this Dispute Under 28 U.S.C. § 1406(a).**

The general venue statute governing all federal civil actions, 28 U.S. Code § 1391, provides, in pertinent part:

> **(b)Venue in General.**—A civil action may be brought in—
> **(1)** a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> **(2)** a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> **(3)** if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Defendants submit that the District of Maryland is an improper forum for this dispute inasmuch as: none of the Defendants resides in the District; none of the events or omissions giving rise to the alleged claims occurred in the district, nor is there property that is subject of the action located within the district; and none of the defendants is subject to the court's personal jurisdiction with respect to the claims asserted in this Action.[8]

---

[8] On the latter point, the out-of-state Defendants point to Maryland's long arm statute in support of their contention that venue in this District is improper:

> A court may exercise personal jurisdiction over a person, who directly or by an agent:
> …
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of

As indicated in the Affidavit of Ian Leopold, all Pridewear contracts for its nearly two dozen investors were prepared and transmitted from Pridewear's New York offices, and the Defendants never sought any investors in Maryland. Pridewear chose New York as the agreed forum for practical reasons and due to the fact that Pridewear is headquartered in New York and its corporate counsel is located there. Under these circumstances, the Court should dismiss the Action for improper venue.

Alternatively, it should transfer the Action to the Southern District of New York, but only if Plaintiffs establish that the interest of justice compels the court to transfer the case rather than dismiss it. 28 U.S.C. § 1406 (**"Cure or waiver of defects"**) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

## C. The Court Should Enforce the Forum Selection Clause in the Agreement, Which is Presumptively Valid, and Dismiss the Action.

1. The forum selection clause is mandatory and reasonable.

Forum selection clauses are *prima facie* valid and enforceable absent a strong showing by the party opposing the clause "that enforcement would be unreasonable or unjust, or that the clause [is] invalid for such reasons as fraud or overreaching." *Bremen, supra*, 407 U.S. at 15. Maryland Courts have applied the *Bremen* rule in concluding that forum selection clauses should be upheld unless they

---

> [cont.'d] conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State …

MD Code, Courts and Judicial Proceedings, § 6-103(b). Apart from Plaintiff's unverified allegations, the record in this case does not contain any facts to establish that any of the three California-based Defendants regularly: does or solicits business in Maryland; engages in any other persistent course of conduct in the State; or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State.

are unfair and unreasonable. *Gilman, supra* at 378; *Rourke v. Amchem Prods., Inc.*, 153 Md.App. 91, 126 (2003). Even where the forum selection clause "establishes a remote forum for resolution of conflicts, 'the party claiming [unfairness] should bear a heavy burden of proof.'" *Carnival Cruise Lines, Inc.*, 499 U.S. at 592 (*quoting Bremen*, 407 U.S. at 17).

The forum selection clause in the CUWPA is mandatory. The Fourth Circuit has explained that "[a] forum selection clause is permissive unless it contains 'specific language of exclusion.'" *BAE Sys. Tech. Sol. & Servs., Inc.*, 884 F.3d 463, 472 (4th Cir. 2018). The forum selection clause in this case included an agreement "not to commence any suit, action or other proceeding arising out of or based upon this Agreement except in the state courts of New York or the United States District Court for the Southern District of New York." Courts have found similarly worded forum selection clauses to be valid and enforceable. *PCGEZG LLC v. Idin Dalpour*, 2025 U.S. Dist. LEXIS 30573, at *5-8 (S.D. Tex. Jan. 8, 2025) (finding that case was filed in wrong forum and enforcing forum-selection clause by dismissing without prejudice under *forum non conveniens* doctrine); *Deese-Laurent v. Real Liquidity, Inc.*, 305 F. Supp. 3d 280, 284-86 (D. Mass. 2018)(following rule that contract-related tort claims involving same operative facts as parallel claim for breach of contract should be heard in the forum selected by the contracting parties, also finding that forum selection clause is enforceable against "closely related" corporate entity); *Breslow v. Klein*, 2018 U.S. Dist. LEXIS 102128, at *11-12 (D.N.J. June 18, 2018) (finding forum selection clause that concerned disputes arising out of parties' relationship and their underlying transaction broad enough to apply to claims in Complaint and to encompass other related agreements); *Aimone v. Investorflow LLC*, 2023 U.S. Dist. LEXIS 85030, at *2-3 (N.D. Cal. May 15, 2023)(enforcing similar NY choice of law provision); *Pegasus Strategic Partners, LLC v. Stroden*, 2016 NY Slip Op 31159(U), ¶¶ 6-8 (Sup. Ct.)(enforcing identical forum selection clause against non-signatories who had sufficiently close relationship with signatory and dispute to which

clause applies, and because such enforcement was foreseeable by virtue of the relationship); *Corsa, L.L.C. v. Notarize, Inc.*, 2017 Okla. Dist. LEXIS 6346, *2-5 (enforcing contractually mandated choice of forum by dismissing petition); *Battista v. Sports Challenge Network Llc*, 2020 Ga. State LEXIS 1990, *2-10; and *Leighton v. Blattner Techs. SVP 1, LLC*, 2023 Cal. Super. LEXIS 101738, *3-9.

Mandatory forum selection clauses, are "prima facie valid" and enforceable unless "shown by the resisting party to be 'unreasonable' under the circumstances." *Bremen*, 407 U.S. at 10. A court will find a forum selection clause unreasonable if: (1) it was "induced by fraud or overreaching;" (2) the opposing party "'will for all practical purposes be deprived of his day in court' because of the grave inconvenience or unfairness of the selected forum;" (3) "the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy;" or (4) "enforcement would contravene a strong public policy of the forum state." *Nova Servs., Inc. v. Recleim Nova, LLC*, Civil Action No. RDB-20-2773, 2021 U.S. Dist. LEXIS 4789, at *6-7 (D. Md. Jan. 11, 2021)(internal citations omitted).

Forum selection clauses are valid even if the parties did not expressly bargain for the provision. *Carnival Cruise Lines, Inc.*, 499 U.S. at 589. In *Carnival*, the Supreme Court enforced a forum selection clause despite that it was part of a form contract and not negotiated between the parties. *Id.* The Court reasoned that a cruise line has a special interest in limiting forum and that a forum selection clause "has the salutary effect of dispelling confusion as to where suits may be brought and defended, thereby sparing litigants time and expense and conserving judicial resources." *Id*. at 593-94. Further, consumers reap the "benefit in the form of reduced fares reflecting the savings that the cruise line enjoys by limiting the forum in which it may be sued." *Id.* at 594. Thus, the Court found that enforcement would not be unreasonable or unjust and that there was no evidence of fraud or overreaching. *Id*. at 595. The Maryland Court of Appeals likewise applied the ruling in the *Carnival* case in its analysis in *Gilman v. Wheater*, *supra*.

Comparable to the cruise line in *Carnival*, the investment offered by Pridewear extended to and was accepted by nearly two dozen investors spread out across the country in over 15 different cities in 10 states, necessitating *ex ante* forum selection. *Leopold Aff.*, at ¶¶ 23, 27. Moreover, the forum selection clause at issue here is conspicuous and reasonable. It cannot be disputed that the CUWPA was presented to Plaintiff Hammond and that he not only received and signed it but was also fully aware of its terms. *See Walther v. Sovereign Bank*, 386 Md. 412, 429 (2005) (stating "the law presumes that a person knows the contents of a document that he executes and understands at least the literal meaning of its terms. When one signs a release or other instrument, he is presumed in law to have read and understood its contents, and he will not be protected against an unwise agreement.").

In concurring in full with the opinion of the majority in *Stewart Organization, Inc. v. Ricoh Corp.*, Justices Kennedy and O'Connor wrote that "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Stewart, supra,* 487 U.S. at 33. For the foregoing reasons, this Court should give effect to the parties' intentions expressed in their written agreement, decline to exercise its subject matter jurisdiction over this matter and dismiss Plaintiffs' complaint under Rule 12(b)(1).

2. <u>The Scope of the Clause Encompasses All Claims and All Parties to the Action.</u>

In their CUWPA, the Parties bargained for a specific geographic forum for the commencement of any suit, action or other proceeding "arising out of or based upon this Agreement." Delaware law provides for the broad construction of such language. *CA, Inc. v. Ingres Corp.*, 2009 Del. Ch. LEXIS 204, *169 n. 290 (Del. Ch. Dec. 7, 2009) (finding that in a forum selection clause, "[l]anguage such as 'relate to' or 'arise out of' is to be read broadly"). Under Delaware law, phrases in a forum selection clause, including "arising under," "related to," or "in

connection with," ... "explicitly extend[] beyond the four corners of the contract." *Carder v. Carl M. Freeman Communities, LLC*, No. CIV.A. 3319-VCP, 2009 Del. Ch. LEXIS 2, 2009 WL 106510, at *5 (Del. Ch. Jan. 5, 2009).[9]

Courts in Delaware and elsewhere have also observed that "the legitimate scope of a valid forum selection clause cannot be circumvented by 'artful pleadings.'" *Ashall Homes Ltd. v. ROK Entm't Grp. Inc.*, 992 A.2d 1239, 1252 (Del. Ch. 2010) (finding that a "forum selection clause should not be defeated by artful pleading of claims not based on the contract containing the clause if those claims grow out of the contractual relationship") (internal quotes omitted).[10]

The court further reasoned that the rule:

> not only prevents parties from escaping their contractual commitments to adjudicate their disputes in a particular forum but also allows the court to police the important boundary between the application of contract and tort doctrines. Tort claims related to a contractual relationship frequently require a determination of the contract's scope and of how the rights and duties created by that contract interact with the parties' general tort duties -- questions that are typically freighted with public policy concerns. []
>
> Here, the Ashall Plaintiffs' non-contract claims depend upon the same set of facts as their contract claims. That is, all of the claims involve the Ashall Plaintiffs' initial decision to invest, their execution of the Subscription Agreements and the Share Sale Agreements, and the parties' performance of their obligations under those agreements. [] Resolution of these claims will require an analysis of the Subscription Agreements and the Share Sale Agreements.

*Ashall Homes Ltd. v. ROK Entm't Grp. Inc.*, 992 A.2d 1239, 1252-53 (Del. Ch. 2010)(footnotes omitted). In this case, all of the claims stem from and involve Plaintiff Hammond's initial decision to invest, his execution of the CUWPA and related instruments, and the parties' performance of

---

[9] This Court has likewise recognized the "broad scope of forum selection clauses that employ phrases such as 'in connection with' or 'arising from.'" *Downey v. Bibys Ins. Servs.*, Civil Action No.: RDB 05-1962, 2006 U.S. Dist. LEXIS 104608 *10-11, 2006 WL 8456641 (D.Md. 2006)(*citing Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1361 (2d Cir. 1993)).

[10] This District has similarly held that a litigant "cannot circumvent the reach of the forum selection clause by artful pleading." *Olawole v. Actionet, Inc.*, Civil Action No. PX 16-3506, 2017 U.S. Dist. LEXIS 51683 *6-8 (D.Md. April 3, 2017)(collecting cases).

their obligations under those agreements. Resolution of these non-contract claims requires an analysis of the CUWPA signed by Hammond and Pridewear and is based upon the same set of operative facts as the contract claims. The Court should see past the artful pleading and enforce the forum selection clause as to all claims in all counts.

Relatedly, the Court can enforce the clause on behalf of, as well as against, non-signatories to the agreement, provided that they are "closely related" to the parties, the contract, and/or the transactions thereunder. Most courts faced with the issue have ruled that "a non-signatory to a contract containing a forum selection clause may enforce the forum selection clause against a signatory when the non-signatory is 'closely related' to another signatory.'" *Law Offices of Mark J. Muffoletto, LLC v. Am. Recovery Serv.*, Civil Action No. DKC 21-116, 2021 U.S. Dist. LEXIS 52264, at *8-9 (D. Md. Mar. 19, 2021)(*quoting Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 723 (2d Cir. 2013))(other citations omitted).

The Court in *Muffoletto* observed that "[t]he utility of a forum-selection clause is furthered when a rather expansive view of who can enforce it applies." 2021 U.S. Dist. LEXIS 52264, at *8-9. When the complaint alleges conduct of nonparties that "is closely related to the contractual relationship, a range of transaction participants, parties and nonparties, should benefit from and be subject to forum selection clauses." *Magi XXI*, 714 F.3d at 722 (internal quotes and citation omitted). *See also*, *Peterson v. Evapco, Inc.*, 238 Md.App. 1, 33-47, 188 A.3d 210 (2018)(charting the full history of the doctrine and explaining that the test centers around who is a "foreseeable" complainant of conduct governed by a forum-selection clause) and *SAMi-Systematic Analysis Mgmt. v. Omnivere Acquisitions, LLC*, Civil Case No. RDB-19-2904, 2020 U.S. Dist. LEXIS 65273; 2020 WL 1863292 (D.Md. April 14, 2020)(noting that a forum selection clause may be enforced against non-parties to a contract whose conduct is "closely related to the contractual

relationship")(*quoting Allstate Indem. Co. v. Overturf*, GJH-14-0466, 2015 U.S. Dist. LEXIS 34501, 2015 WL 1279194, at *4 (D. Md. 2015))(other citations omitted).

In *Olawale v. Actionet, Inc.*, Civil Action No. PX 16-3506, 2017 U.S. Dist. LEXIS 51683 (D.Md. April 3, 2017), this district enforced a forum selection clause against a non-signatory to a consultant agreement and transferred the case to the agreed upon venue. In reaching its conclusion, the court reasoned that "[w]hile Olawole was not a party to the Agreement in his individual capacity, he is, nevertheless, subject to the forum-selection clause because his employment relationship with Graffiti and ActioNet is 'closely related' to the terms of the Consulting Agreement." *Olawale* at *6 (citations omitted). The Court found that Olawale's claims were "closely related, if not identical" to those of the party that had executed the Consulting Agreement, and that the two plaintiffs had asserted "the same claims of discrimination arising from the same nexus of facts" and further jointly request backpay in the same amount stemming from the events of the case. pp. *6-8

In this case, Plaintiff has attempted to plead around the forum selection clause in various ways, *inter alia* by including vague allegations about the formation of the parties' contract – without referring to the existence of any executed agreements between the parties -- and by adding non-signatories as parties to the action as well as extra-contractual claims. Such clever pleading is unavailing in this case. With respect to Plaintiff Milnel Foundation Inc., the Complaint makes no effort to distinguish the acts, conduct or events between the two plaintiffs as they relate to the contractual relationship between Defendant Pridewear and Plaintiff Hammond. Virtually every material allegation in the Complaint concerning the alleged liability of the Defendants concerns their acts and omissions vis-à-vis the "Plaintiffs." The claims asserted by MFI are "closely related, if not identical" to those asserted by Hammond, and the two plaintiffs have jointly asserted the

same eight counts "arising from the same nexus of facts." It is therefore not unreasonable, nor is it unforeseeable nor unfair for this Court to enforce the forum selection clause against MFI despite that it was not a party to the contract.

### D. The Court Should Dismiss the Action on Grounds of *Forum Non Conveniens*

An alternative forum, namely, the United States District Court for the Southern District of New York, has jurisdiction to hear this case, whereas trial in the District of Maryland would be oppressive and vexatious to Defendant Pridewear, who bargained for the right to have the transactions between the sophisticated investing parties enforced only in "the state courts of New York or the United States District Court for the Southern District of New York." Given the factors established in the Affidavit of Ian Leopold, trial in Maryland would impose a heavy burden on the Defendants, much more so than any inconvenience to Plaintiffs that they may allege will result from trial in New York, to which they already consented. Accordingly, the Court should exercise its discretion to dismiss the case on the ground of *forum non conveniens*.

### E. Alternatively, the Court Should Transfer the Action to the Southern District of New York Under 28 U.S.C. § 1404(a).

This Court has the authority to transfer any civil action to any other judicial district or division for the convenience of the parties and witnesses and in the interest of justice. *See* 28 U.S.C. § 1404(a). Where a party's motion to transfer venue is based on a forum selection clause, "[s]uch clause shifts the burden from the party seeking transfer to the party opposing it." *Blue Mako, Inc. v. Minidis*, 472 F.Supp.2d 690, 704 (M.D.N.C. 2006) (citing *Allen v. Lloyd's of London*, 94 F.3d at 928).

Ordinarily, a district court will weigh the relevant factors and decide whether, on balance, a transfer serves "the convenience of parties and witnesses" and otherwise promote "the interest

of justice." §1404(a). *Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 62-63, 134 S. Ct. 568, 581 (2013). However, as the Supreme Court has held:

> The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which "represents the parties' agreement as to the most proper forum." … The "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." … For that reason, and because the overarching consideration under §1404(a) is whether a transfer would promote "the interest of justice," "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases."

*Atl. Marine*, supra at 63 ("the plaintiff's choice of forum merits no weight."). There are no public interest factors that would prevent the Court from effectuating the parties' intent and transferring the Action to the agreed forum.

## IV. CONCLUSION

The existence of the valid forum selection clause in the Agreement shifts the burden to Plaintiffs to demonstrate that enforcement of the provision would be unreasonable or unjust, or that the clause is otherwise invalid. This, Plaintiffs cannot do. Accordingly, the Court should enforce the parties' presumptively valid forum selection clause and dismiss the Action pursuant to Fed. R. Civ. P. 12(b)(1), (3) or (6), or conclude that dismissal is appropriate under the doctrine of *forum non conveniens*, or alternatively, transfer the Action to the United States District Court for the Southern District of New York.

Respectfully submitted,

/s/ *Jason C. Brino*
Jason C. Brino (Fed. Bar No. 23535)
brino@esglawmd.com
Esworthy Garner & Stevens LLC
210 Allegheny, Suite 110
Towson, Maryland 21204
(Tel) 410-321-0402
(Fax) 410-321-0403
*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of June 2025, a copy of the foregoing Joint Motion to Vacate Orders of Default was served via this Court's CM/ECF system and electronic mail on:

Christopher Millard, Esq.
Law Offices of Christopher Millard, LLC
8016 Bellona Avenue, Suite 43
Riderwood, Maryland 21139
c.millard@millard.legal
*Attorney for Plaintiffs*

/s/ Jason C. Brino